# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| APEX MORTGAGE CORPORATION, ) | |
| ) | No. 17 C 3376 |
| Plaintiff, ) | |
| ) | Judge Virginia M. Kendall |
| v. ) | |
| ) | Magistrate Judge M. David Weisman |
| GREAT NORTHERN INSURANCE ) | |
| COMPANY and FEDERAL ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff has filed an omnibus motion to compel discovery responses from defendant Federal Insurance Company ("Federal"). Judge Kendall has referred the motion to this Court for resolution. For the reasons set forth below, the motion is granted in part, denied in part, and stricken as moot in part.

## Background

Plaintiff is the mortgagee of property located at 1738-44 E. 75th Street in Chicago. Defendant Great Northern issued a $1 million primary insurance policy and defendant Federal issued a $15 million excess policy to plaintiff covering third-party claims for bodily injury or death arising out of an accident on property within plaintiff's care, custody or control. During the policy period, two firefighters were killed during fire suppression activities at the 75th Street property, and their estates sued plaintiff for negligence. Defendants indemnified plaintiff for the costs of defending the lawsuits but refused to contribute to any settlement, arguing that the

following exclusion, which is in both policies, precluded coverage: "This insurance does not apply to any liability or loss, cost or expense arising out of property you acquire by foreclosure, repossession, deed in lieu of foreclosure or as mortgagee in possession." (Pl.'s Omnibus Mot. Compel, Ex. L, ECF 42-13.) Plaintiff says it had not acquired the 75th Street property in any of the ways contemplated by the exclusion, and defendants knew it. Thus, plaintiff filed this suit alleging, among other things, that defendants breached the policy and acted in bad faith.

## Discussion

**Requests for Admission**

Plaintiff's requests 3 and 5 ask Federal to admit that plaintiff did not acquire the 75th Street property through foreclosure, repossession, deed in lieu of foreclosure, or as mortgagee in possession. (Pl.'s Omnibus Mot. Compel, Ex. A, ECF 42-2 at 9.) Federal responded that the requests were irrelevant, but ultimately denied them, set forth the facts on which its denials were based, and agreed to produce the associated documents. (*Id.*, Ex. E, ECF 42-6 at 2-6.) Plaintiff argues that "Federal's responses are plainly inadequate and otherwise non-responsive" because Federal cites to facts that "do not remotely support the proposition that [plaintiff] acquired the property by the specifically designated means set forth in the 'Foreclosure Exclusion.'" (Pl.'s Omnibus Mot. Compel, ECF 42 at 4-5.) In other words, plaintiff does not like the answers it got, a situation that cannot be remedied by a motion to compel. *See Vardon Golf Co. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 653 (N.D. Ill. 1994) (Rule 36 is appropriate measure in assessing adequacy of response to requests to admit, not party's satisfaction with the responses); *see also United States v. Operation Rescue Nat'l*, 111 F. Supp. 2d 948, 968 (S.D. Ohio 1999) ("Courts have concluded that the ability to move to determine the sufficiency of answers and objections [to

requests to admit] does not entitle one to request that a court determine the accuracy of a denial," and cases cited therein).

Requests 7 and 8 ask Federal to admit that the complaints in the underlying suits do not allege that plaintiff acquired or owned the 75th Street property. (*Id.*, Ex. A, ECF 42-2 at 13-14.) Again, Federal denied the requests, identified facts in support of the denials, and agreed to produce associated documents. (*Id.*, Ex. E, ECF 42-6 at 9-10.) Again, plaintiff quarrels with the accuracy of the responses (Pl.'s Omnibus Mot. Compel, ECF 42 at 6-7), but the Court cannot compel Federal to respond differently. See *supra*.

Requests 10-12 ask Federal to admit that Great Northern and Federal did not offer money to settle the underlying cases. (*Id.*, Ex. A, ECF 42-2 at 16-18.) Federal denied all of the requests because Great Northern tendered its $1 million policy limit toward settlement. (*Id.*, Ex. E, ECF 42-6 at 11-13.) Plaintiff contends that the responses are incomplete because they do not state whether Federal offered money to settle the suits. But the requests did not ask whether Federal offered money to settle the cases or whether Federal *or* Great Northern did so; they ask for an admission that Federal *and* Great Northern did not offer money. *See Sparton Corp. v. United States*, 77 Fed. Cl. 10, 18 (Ct. Cl. 2007) ("[F]ederal courts have long required that requests for admission be simple, direct, and concise so that they can be admitted or denied with little or no explanation or qualification," and noting the long required practice that each matter seeking a response "be *separately* set forth in a request for admission"); *see also* 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2258. Because Federal responded to the requests as written, there is no basis to compel it to respond further.

requests to admit] does not entitle one to request that a court determine the accuracy of a denial," and cases cited therein).

Requests 7 and 8 ask Federal to admit that the complaints in the underlying suits do not allege that plaintiff acquired or owned the 75th Street property. (*Id.*, Ex. A, ECF 42-2 at 13-14.) Again, Federal denied the requests, identified facts in support of the denials, and agreed to produce associated documents. (*Id.*, Ex. E, ECF 42-6 at 9-10.) Again, plaintiff quarrels with the accuracy of the responses (Pl.'s Omnibus Mot. Compel, ECF 42 at 6-7), but the Court cannot compel Federal to respond differently. See *supra*.

Requests 10-12 ask Federal to admit that Great Northern and Federal did not offer money to settle the underlying cases. (*Id.*, Ex. A, ECF 42-2 at 16-18.) Federal denied all of the requests because Great Northern tendered its $1 million policy limit toward settlement. (*Id.*, Ex. E, ECF 42-6 at 11-13.) Plaintiff contends that the responses are incomplete because they do not state whether Federal offered money to settle the suits. But the requests did not ask whether Federal offered money to settle the cases or whether Federal *or* Great Northern did so; they ask for an admission that Federal *and* Great Northern did not offer money. *See Sparton Corp. v. United States*, 77 Fed. Cl. 10, 18 (Ct. Cl. 2007) ("[F]ederal courts have long required that requests for admission be simple, direct, and concise so that they can be admitted or denied with little or no explanation or qualification," and noting the long required practice that each matter seeking a response "be *separately* set forth in a request for admission"); *see also* 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2258. Because Federal responded to the requests as written, there is no basis to compel it to respond further.

**Document Production Requests**

    **Privilege**

Plaintiff contends that Federal improperly withheld documents on the grounds of privilege because: (1) the privilege does not apply if Federal is asserting advice of counsel to support a defense or counterclaim; (2) the privilege log for documents FED000344-45, FED000350, FED000357-58, FED001863, FED002621, FED002752, FED002769, FED002771, FED002773, FED002858, FED002959, FED004101-08, FED004268-75, FED004434-41, and FED004445-52, which are communications among Federal's employees, file notes, internal reports, and a draft reservation of rights letter, does not show that an attorney participated in the communications or wrote the notes, reports or letter; (3) Federal has not established that the in-house lawyers involved in the communications identified as documents FED000266-69, FED003053, FED003054-55, and FED003056-68 were acting as lawyers rather than business people with respect to these communications; and (4) Federal's descriptions of documents FED001333-1400, FED004356-4423, and FED004455-4522 are too vague to enable a privilege determination. (Pl.'s Omnibus Mot. Compel, ECF 42 at 9-15.)

The first argument is easily dispatched. Under Pennsylvania law,[1] the attorney client privilege is waived when the client asserts a claim or defense that puts his attorneys' advice at issue in the litigation. *See Mueller v. Nationwide Mut. Ins. Co.*, 31 Pa. D. & C. 4th 23, 32 (Com. Pl. 1996). Federal says it has not "pleaded advice of counsel as an affirmative defense" or "asserted any counterclaims that rely on advice of counsel." (Def.'s Resp. Mot. Compel, ECF 52 at 19.) Thus, it has not waived the privilege.

Plaintiff fares better with its second argument. Under Pennsylvania law:

---

[1] Though the parties cite Illinois law, the Court has already determined that Pennsylvania law governs the issue of attorney client privilege in this case. (*See* 1/8/18 Mem. Op. & Order, ECF 65.)

> Four elements must be satisfied in order to invoke successfully the protections of attorney-client privilege: 1) The asserted holder of the privilege is or sought to become a client. 2) The person to whom the communication was made is a member of the bar of a court, or his subordinate. 3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort. 4) The privilege has been claimed and is not waived by the client.

*Custom Designs & Mfg. Co. v. Sherwin-Williams Co.*, 39 A.3d 372, 376 (Pa. Super. Ct. 2012). The privilege applies to corporate clients as well as individuals. *Id.* A corporation "may claim the privilege for communications between [its] attorney and [its] agents or employees who are authorized to act on behalf of the [corporation]." *Gould v. City of Aliquippa*, 750 A.2d 934, 937 (Pa. Commw. Ct. 2000).

It is not clear that FED002769, FED002771, FED002773 (described as file notes regarding coverage counsel and reserve expenses) and FED002858-59 (described as casualty coverage, monitoring and Chubb litigation counsel request forms) are communications subject to the privilege. Moreover, no corporate employee is identified in the privilege log as the recipient of FED003056-68 or the author or recipient of FED002752, and it is not clear whether the employees listed in the log as the authors or recipients of FED000266-69, FED000344-45, FED000350, FED000357-58, FED001863, FED002621, FED003053-55, FED004101-08, FED004268-75, FED004434-41, and FED004445-52 are authorized to act on behalf of Federal. Finally, FED001333-1400, FED004356-4423, and FED004455-4522, which are identified as letters "and exhibits," are not adequately described to claim privilege. Thus, Federal has not established that any of these documents are subject to the attorney-client privilege, and must amend its privilege log to do so.

Federal also argues that all of those documents, as well as FED004431-33, are protected by the work product privilege. *See* Fed. R. Civ. P. 26(b)(3)(A) ("[A] party may not discover

documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."). "[T]he threshold determination in any case involving an assertion of the work product privilege . . . is whether the materials sought to be protected from disclosure were in fact prepared in anticipation of litigation." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983). "The mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney with the protection of the work product privilege." *Id.* Rather, "the party seeking to assert the work product privilege has the burden of proving that at the very least some articulable claim, likely to lead to litigation, has arisen." *Id.* at 1119 (quotation omitted).

Here, plaintiff's lawyer in a letter dated August 12, 2014 threatened to file suit against Federal if it did not withdraw its reservation of rights. (Def.'s Ex. Supp. Resp. Mot. Compel, Ex. 9, 8/12/14 letter from Pl. to Def., ECF 52-1 at 6.) Thus, as Federal seems to concede, documents prepared before that date, *i.e.*, FED002978-79, FED002981, FED002989, FED002993, FED003053, FED003054-55, and FED003056-68, are not subject to the work product privilege. Thus, these documents must be produced.

The descriptions and dates of the remaining documents – FED000341, FED000350, FED000357-58, FED000805, FED001863, FED002621, FED002769, FED002771, FED002773, FED002858, FED002959, FED004098-4100, FED004101-08, FED004129, FED004265-67, FED004268-75, FED004431-22, FED004434-41, FED004442-44, and FED004445-52 – suggest that they may have been created in anticipation of litigation. The Court agrees with plaintiff, however, that the descriptions of most of these documents are not specific enough to establish

that they were in fact created in anticipation of litigation rather than in the ordinary course of business. Therefore, Federal must amend its privilege log to show that the work product privilege is properly asserted.

Assuming arguendo that these documents are work product, plaintiff argues they fall into the "substantial need" exception to the privilege. In support of this argument, plaintiff cites *Logan v. Commercial Union Insurance Co.*, 96 F.3d 971 (7th Cir. 1996). The defendant in *Logan* claimed that documents relating to the disposition of plaintiff's insurance claim, which it created after plaintiff filed suit against the company, were protected work product. *Id.* at 975-76. Plaintiff asserted that he had a substantial need for the documents to prove his claim that the insurer acted in bad faith. *Id.* at 977. The Seventh Circuit "recognize[d] that allowing a plaintiff to overcome an insurer's work product privilege may be particularly appropriate in an action for bad faith, in light of the insurer's virtual monopoly over the evidence required to support such an action." *Id.* However, the court stated that "a naked claim of bad faith cannot, without more, authorize a fishing expedition into privileged communications." *Id.* Rather, to overcome the privilege, the plaintiff "must demonstrate some likelihood or probability that the documents sought may contain evidence of bad faith." *Id.*

Plaintiff says that Federal's conduct, relying on a policy exclusion that it had "previously repudiated to [plaintiff], [plaintiff's] federal regulators, and the underlying claimants" (Pl.'s Omnibus Mot. Compel, ECF 42 at 18), demonstrates the likelihood that the documents plaintiff seeks contain evidence of bad faith. Plaintiff does not, however, cite documents that support its claim that Federal repeatedly repudiated the exclusion, though documents the Court found in the record provide some support. For example, in March 2012 Federal's lawyer told the FDIC that plaintiff had rejected the mortgagor's request to accept a deed in lieu of foreclosure on the 75th

Street property. (*See* Compl., Ex. F, 3/1/12 Letter from Def. to FDIC.) Moreover, in September 2014, Federal said in a letter to plaintiff that "the current allegations and known facts do not suggest [plaintiff] foreclosed on the property or was granted possession of the property as mortgagee in possession," though there was the "potential" that plaintiffs in the underlying suits would "argue that Apex acquired the property as a mortgagee in possession in some other manner." (Def.'s Exs. Supp. Resp. Mot. Compel, Ex. 13, 9/23/14 Letter from Def. to Pl.) The record also contains a May 2008 order dismissing plaintiff's foreclosure action against the mortgagor (*see* Compl., Ex. G, *Apex v. Dai*, No. 07 CH 38245 (Cir. Ct Cook Cnty. May 12, 2008)), though it is not clear whether or when Federal received it. Finally, there is an April 2014 email from Federal's counsel to counsel for plaintiffs in the underlying suit that states: "[P]lease be advised that Apex is covered by a policy of excess/umbrella insurance, through Chubb/Federal Insurance . . . in the amount of $15 million." (Compl., Ex. H, 4/22/14 Email from Casieri to Scott.) These documents, though somewhat equivocal, "demonstrate some likelihood" that the information plaintiff seeks may contain evidence of bad faith. *Logan*, 96 F.3d at 977. Accordingly, plaintiff has demonstrated substantial need for documents FED00266-69, FED000341, FED000344-45, FED000350, FED000357-58, FED000805, FED00974, FED001863, FED002621, FED002752, FED002769, FED002771, FED002773, FED002858, FED002959, FED002989, FED002993, FED003503, FED003504-55, FED003056-68, FED004098-4100, FED004101-08, FED004129, FED004265-67, FED004268-75, FED004431-22, FED004434-41, FED004442-44, and FED004445-52.

The exception, however, also requires plaintiff to show that it cannot "obtain the[] substantial equivalent [of these documents] by other means." Fed. R. Civ. P. 26(b)(3)(A). Federal asserts that plaintiff can obtain this information by deposing Federal's representatives, an

assertion that plaintiff says "rings hollow" because Federal's documents are "the only source of information that can test the veracity of such testimony." (*See* Pl.'s Reply Supp. Omnibus Mot. Compel at 12.) In other words, plaintiff assumes that Federal's deponents will be untruthful or obstructionist absent production of Federal's work product. The Court declines to endorse this assumption and finds that plaintiff has not established that the substantial need exception applies. *See Lawrence E. Jaffe Pension Plan v. Household Int'l*, 244 F.R.D. 412, 428 (N.D. Ill. 2006) (availability of deposition testimony as alternative source for work product privilege material defeats claim for access to privileged material); *Eagle Compressors v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D. Ill. 2002) (when seeking fact work product discovery, the party seeking the work product "must demonstrate a substantial need for the material and an inability to obtain the substantial equivalent of the information without undue hardship. This burden is difficult to meet and is satisfied only in rare situations, such as those involving witness unavailability.") (*citing Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.,* No. 00 C 1926, 2000 WL 1898518, at * 3 (N.D. Ill. Dec. 20, 2000)).

**Reserves**

Federal has also refused to produce, in whole or part, documents that reflect its establishment of reserves, *i.e.*, FED002523, FED002527, FED002528, FED002627, FED002685, FED002744, FED002769, FED002771, FED002773, FED002978-79, FED002981, FED002989, FED002993, FED004032-33, FED004034-35, on the grounds that such information is irrelevant to the Pennsylvania state-law claim of bad faith. (Def.'s Resp. Mot. Compel. at 23.) But the case on which Federal relies, *Mine Safety Appliances Co. v. North River Insurance Co.*, No. 2:09-cv-00348-DSC, 2012 WL 12930363 (W.D. Pa. Mar. 14, 2012), does not support its position. As Federal correctly notes, the *Mine Safety* court acknowledged that "under

Pennsylvania law discovery into reserves set by an insurer that has denied coverage is generally not discoverable, even when the insurer is sued for bad faith based upon the coverage denial." *Id.* at *2. However, the court went on to say that "Pennsylvania courts allow discovery only in the limited circumstance of a claim for bad faith involving an insurer's failure to settle, including a failure to make a reasonable settlement offer, *id.* at *3, which is precisely what plaintiff alleges here. Moreover, other Pennsylvania courts have found reserves information to be discoverable when bad faith is alleged. *See Keefer v. Erie Ins. Exch.*, No. 1:13-CV-1938, 2014 WL 901123, at *3 (M.D. Pa. Mar. 7, 2014) ("Since Plaintiff claims that Defendant acted in bad faith during its investigation of Plaintiff's claim, a comparison between the reserve value of the claim and Defendant's actions in processing Plaintiff's claim could shed light on Defendant's liability under the bad faith statute. The reserve amount is, therefore, relevant or could potentially lead to relevant information, and the court will order disclosure of such information.") (footnote omitted); *Shaffer v. State Farm Mut. Auto. Ins. Co.*, No. 1:13-CV-01837, 2014 WL 931101, at *3 (M.D. Pa. Mar. 10, 2014) ("Since Plaintiffs claim State Farm has acted in bad faith during its investigation of their UIM claim, the amount set aside for reserves is relevant to the determination of whether State Farm acted in bad faith in processing the claim, and therefore, the court will order disclosure of such information."); *N. River Ins. Co. v. Greater N.Y. Mut. Ins. Co.*, 872 F. Supp. 1411, 1412 (E.D. Pa. 1995) ("The reserves, of course, must have some relationship to the insurer's estimation of the insured's potential liability. Otherwise, the setting aside of reserves would serve little, if any, purpose. Accordingly, the amount at which GNY set its reserves for the McIlhenny case is certainly germane to any analysis GNY made of its settlement value. This information, in turn, is relevant to the question of whether or not GNY acted in bad faith during the pretrial settlement negotiations."). Thus, the Court finds that the

reserves documents are relevant and, unless Federal demonstrates on its amended privilege log that these documents are subject to the attorney-client or work product privilege, they must be produced.

**Claims File and Coverage Decision**

Plaintiff also seeks documents responsive to requests 23-29, 37-38, 40, 42, and 43, which seek Federal's claims file and documents relating to the coverage decision, this case, or the underlying lawsuits. (Pl.'s Omnibus Mot. Compel, ECF 42 at 21; *id.*, Ex. B, ECF 42-3.) Federal does not object to these requests, and asserts that it has produced the entire claims file with privileged information redacted. (*See* Def.'s Resp. Mot. Compel at 24-25.) Federal does not, however, state whether the claims file constitutes the universe of documents responsive to plaintiff's requests, identify the documents that constitute the claims file, or identify the privilege(s) asserted for any portions of the claims file documents that have been redacted. Accordingly, the Court orders Federal to produce: (1) any non-privileged documents responsive to these requests that have not already been produced; and (2) any portions of the claims file Federal has designated as privileged that this opinion makes clear are not privileged.

**Personnel Hierarchy**

Plaintiff also asks the Court to compel Federal's compliance with document requests 62 and 66, which seek documents that describe or identify the hierarchy of the Federal personnel responsible for adjusting claims, setting reserves, providing settlement authority, or issuing a reservation of rights from 2010-17. Federal objected on the grounds of relevance, vagueness, undue burden, and to the extent compliance would require production of trade secrets. (Pl.'s Omnibus Mot. Compel, Ex. F, 42-7 at 28-31.) Plaintiff says these requests seek documents "identifying the hierarchy of Chubb personnel, including [those] individuals who were involved

in the handling of the underlying litigations or were responsible for determining whether and when to disclaim coverage." (Pl.'s Omnibus Mot. Compel., ECF 42 at 23.) Based on plaintiff's motion, the Court understands this request for production to be limited to documents that *identify* the hierarchy of individuals involved in the handling of the underlying claim. As originally phrased, the request to produce appeared to include "*all* documents *which evidence* or otherwise describe or identify the hierarchy of Federal personnel" involved in the handling of the liability claim, which could be construed to require a much broader array of documents. (*Id.*) (emphasis added). So narrowed, the requests are not unduly vague and seek relevant information. Thus, unless Federal can demonstrate that responsive documents are privileged or their production would be disproportionately burdensome, which it has not done, Federal must comply with these requests.

**Exclusion Drafting**

Plaintiff next requests that Federal be compelled to comply with document requests 2, 4-7, 19-21, 50, 52, and 53, which seek discovery regarding the formulation, drafting, editing, approval, and use of the exclusions in the policy "as well as [defendant's] use of financial institution exclusions, which were not included in the Federal Policy." (*Id.* at 25.) Federal says it has:

> [P]roduced all prior and subsequent versions of the "Foreclosure" exclusion that have been used in Federal policies. Federal has also produced the underwriting file for the Federal policy that is at issue in this case. Federal has also searched for, but has been unable to find, other responsive documents that relate to the formulation, drafting, editing, approval, and use of the "Foreclosure" exclusion. Federal has objected to the production of any documents related to other policy provisions or so-called "financial institution exclusions" that were not included in the Federal policy.

(Def.'s Resp. Mot. Compel, ECF 52 at 26) (citations omitted).

Because the foreclosure exclusion is the only one on which Federal relies to deny coverage, the Court agrees with Federal that documents relating to other policy exclusions, particularly those that do not even appear in the policy issued to plaintiff, are irrelevant to this suit. Thus, Federal must only produce documents responsive to requests 2, 6 (to the extent it implicates the foreclosure exclusion), 7, and 50.

**Other Claims Discovery**

In document requests 8-10, 14-18, 50, 52-53, 54, 56-57, 67, and 69, plaintiff seeks claims files and litigation documents for other cases in the last ten years in which Federal raised the foreclosure exclusion, the care, custody or control exclusion, or the repair and maintenance exclusion as a defense to coverage or was accused of bad faith in asserting any exclusion to coverage. Federal objects to these requests on the grounds of relevance and undue burden.

The Court agrees with Federal that documents relating to exclusions not asserted by it in this case, *i.e.*, exclusions other than the foreclosure exclusion, have too little relevance to this case to justify the burden of their production. Therefore, Federal is not required to produce documents responsive to requests 14-18, 52-53, 56-57 or 69 (to the extent it seeks documents relating to claims of bad faith assertion of other exclusions).

The remaining requests – 8-10, 50, 54, 67, and 69 (to the extent it seeks documents relating to claims of bad faith assertion of the foreclosure exclusion) – seek documents pertaining to Federal's use of the foreclosure exclusion in other cases. Plaintiff argues that such documents are relevant because they could show that Federal has a pattern of denying similar claims or has interpreted the provision differently at different times. (Pl.'s Omnibus Mot. Compel, ECF 42 at 29.) Federal contends that it should not have to produce such documents as "[c]ourts presiding over bad-faith claims under Pennsylvania law have generally refused to compel such discovery"

because "insurance litigation rests upon particular factual circumstances, which are likely to differ significantly from case to case." (Def.'s Resp. Mot. Compel, ECF 52 at 27) (quotations and citations omitted).

The Court agrees with Federal. As one Pennsylvania court noted, "the majority of the opinions addressing this issue disfavor the discovery of similar claims evidence in bad faith cases." *Graham v. Progressive Direct Ins. Co.*, No. CIV. A. 09-969, 2010 WL 3092684, at *1 (W.D. Pa. Aug. 6, 2010) (citing *McCrink v. Peoples Benefit Life Ins. Co.*, Civ. A. No. 04-1068, 2004 WL 2743420, at *6 (E.D. Pa. Nov. 29, 2004); *Cantor v. Equitable Life Assurance Soc'y of the U.S.*, Civ. A. No. 97-5711, 1998 WL 306208, at *3 (E.D. Pa. June 9, 1998); *Kaufman v. Nationwide Mut. Ins. Co.*, Civ. A. No. 97-1114, 1997 WL 703175, at *2 (E.D. Pa. Nov. 12, 1997); *Schellenberger v. Chubb Life Am.*, Civ. A. No. 95-4514, 1996 WL 92092, at *3 (E.D. Pa. Feb. 29, 1996); *N. River Ins. Co.*, 872 F. Supp. 1411, 1412 (E.D. Pa. 1995); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, Civ. A. No. 88-9752, 1991 WL 183842, at *3 (E.D. Pa. Sept. 16, 1991)). Indeed, even the court in a case cited by plaintiff, *Sickora v. Northwestern Mutual Life Ins. Co.*, No. CIV. A. 00-6194, 2001 WL 1202800 (E.D. Pa. Oct. 10, 2001), denied a request for other claims discovery because "[s]uch all encompassing discovery of prior claims is overly broad and irrelevant [absent] . . . [a] threshold requirement that the underlying facts and circumstances be similar to the instant case." *Id.* at *1. Plaintiff's requests have no such threshold, and requiring Federal to locate the requested documents for the requested ten-year time span would be unduly burdensome and not proportional to the needs of this case. Thus, Federal will not be required to comply with document requests 8-10, 50, 54, 67, and 69.

**Documents Concerning Federal's House Counsel**

In requests for production 30-33, plaintiff seeks documents that describe the relationship between Federal and its house counsel, Schueler, Dallavo & Casieri ("SDC"). (*See* Pl.'s Omnibus Mot. Compel, Ex. B, ECF 42-3.) Alternatively, plaintiff says it will withdraw these requests if Federal stipulates that SDC lawyers were Federal's agents acting within the scope of their employment. (Pl.'s Omnibus Mot. Compel., ECF 42 at 32.) Federal has so stipulated. (*See* Def.'s Resp. Mot. Compel, ECF 52 at 29.) Therefore, this portion of plaintiff's motion is moot.

**Underwriting Files**

Request to Produce No. 1 seeks "[a]ll Underwriting Files for the Federal Policy and any prior or subsequent iteration of the Federal Policy, including but not limited to any and all preceding policies and renewal or succeeding policies." (Pl.'s Omnibus Mot. Compel., Ex. B, ECF 42-3.) Federal says it has issued policies to plaintiff or its predecessor since 2001, and has produced "the underwriting files for the policies that were in place" when the fire occurred at the 75th Street property. (Def.'s Resp. Mot. Compel, ECF 52 at 30.) Federal objects to producing the underwriting files for previous policies, which include 2,171 separate electronic files, because they are irrelevant and their production would be unduly burdensome. (*Id.*) However, Federal has given plaintiff an index of the files, so plaintiff could "pare down its request," and "has offered to perform keyword searches within the documents to try to find particular information that may be relevant." (*Id.*)

Plaintiff maintains that full production is required but does not explain why the files for previous policies are relevant. Absent that explanation, and given Federal's offers to help

plaintiff winnow down its request, the Court will not compel Federal to comply with document request 1.[2]

**Interrogatories**

In interrogatories 1, 2, and 7, plaintiff asks Federal to identify the individuals who had a role in handling the underlying lawsuits, issuing the reservation of rights letter, and investigating whether plaintiff had acquired the 75th Street property. In interrogatory 3, plaintiff asks Federal to identify the individuals who had a role in drafting the foreclosure exclusion. (Pl.'s Omnibus Mot. Compel, Ex. C, ECF 42-4.) Federal initially responded by referring plaintiff to the claims file. (Def.'s Resp. Mot. Compel, ECF 52 at 30-31.) However, Federal has now "agreed to provide supplemental responses identifying [the] individuals [who handled the underlying lawsuit]," and has "advised [plaintiff] that it has been unable to identify the individuals who actually drafted the text of the 'Foreclosure' exclusion." (*Id.* at 31.) Given this information and agreement to supplement, plaintiff's motion with respect to interrogatories 1, 2, 3, and 7 is moot.

In interrogatories 5 and 6, plaintiff asks Federal to identify the individuals who had a role in drafting the care, control or custody and maintenance and repair exclusions. Because, as discussed above, plaintiff has not explained how those exclusions are relevant to this suit, its motion to compel compliance with these interrogatories is denied.

---

[2] In its reply, plaintiff also asks the Court to compel Federal to comply with document requests 34-36, 58-61, and 64-65. (Pl.'s Reply, ECF 56 at 15.) Because plaintiff did not offer any argument with respect to these requests, the Court denies this portion of plaintiff's motion.

## Conclusion

For the reasons set forth above, the Court grants in part, denies in part, and strikes as moot in part plaintiff's omnibus motion to compel [42]. Federal has fourteen days from the date of this Memorandum Opinion and Order to:

> (1) provide plaintiff with an amended privilege log that demonstrates the documents withheld on the grounds of attorney-client or work product privilege are, in fact, privileged;
>
> (2) produce FED002523, FED002527, FED002528, FED002627, FED002685, FED002744, FED002769, FED002771, FED002773, FED002978-79, FED002981, FED002989, FED002993, FED003053, FED003054-55, and FED003056-68, FED004032-33, FED004034-35, which contain reserves information, unless Federal can demonstrate that they are subject to the attorney-client privilege or work product privilege;
>
> (3) produce any non-privileged documents responsive to document requests 23-29, 37-38, 40, 42, and 43 that have not already been produced and any portions of the claims file that Federal has designated as privileged that this opinion makes clear are not privileged;
>
> (4) produce documents responsive to document requests 62 and 66; and
>
> (5) produce documents responsive to document requests 2, 6 (to the extent it implicates the foreclosure exclusion), 7, and 50.

**SO ORDERED.**                     **ENTERED: January 9, 2018**

_____
**M. David Weisman**
**United States Magistrate Judge**