IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| APEX MORTGAGE CORPORATION,<br><br>    *Plaintiff*,<br><br>    v.<br><br>GREAT NORTHERN INSURANCE COMPANY and FEDERAL INSURANCE COMPANY,<br><br>    *Defendants*. | No. 17 C 3376<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

In December 2010, two firefighters tragically died on duty when the roof of a rundown laundromat collapsed on them. The next year, representatives of their families sued the owners of the property and the lender that had a mortgage on it. The lender, Apex Mortgage Corporation ("Apex"), settled that lawsuit for $15 million in 2017. Apex asked its insurer, Federal Insurance Company ("Federal"), to pay for this settlement because the governing policy covers third-party liability claims for bodily injury or death arising out of an accident on property within Apex's care, custody, or control. Federal disclaimed coverage because its insurance policy excludes any property Apex acquired as "mortgagee in possession."

Apex sued Federal in district court for breach of contract (among other things) based on Federal's refusal to compensate Apex for the settlement. Apex stipulated to the dismissal of all the claims it alleged against Federal's co-defendant, Great

Northern Insurance Company, in 2018. (Dkt. 131.) Apex and Federal then cross-moved for summary judgment arguing over whether Apex acquired the old laundromat as a mortgagee in possession. (Dkt. 121, 132.) Because the undisputed facts establish that Apex was a mortgagee who obtained possession of the property from the owners with their consent in the mortgage agreement, the Court grants Federal's motion (Dkt. 121), denies Apex's cross-motion (Dkt. 132), and accordingly enters summary judgment for Federal.

## BACKGROUND

Brothers Chuck and Richard Dai purchased property located at 1738–1744 E. 75th Street, Chicago, IL in 1986. (Dkt. 135 ¶ 15.) For some time, the Dais operated a commercial laundromat at this location known as "Singway Laundry." *Id.* On February 28, 2000, Chuck Dai (Dai) obtained a $60,000 commercial loan from Apex, secured by a mortgage on the property recorded on March 2, 2000. (Dkt. 135 ¶ 15; Dkt. 137 ¶ 6.) The Dais closed their business in 2007 and it later fell into disrepair. *Id.* ¶ 17. In October 2008, Dai defaulted on his loan for a second time. *Id.* ¶ 18.

The mortgage agreement states that, upon default, Apex may "enter and take possession of the Property and manage and operate the Property, as Mortgagee in possession . . . regardless of whether foreclosure proceedings have been instituted or not." (Dkt. 122-2 § 23.4.) The agreement continues in the next section: "Upon the occurrence of any Event of Default, Mortgagee . . . may . . . do any acts required of Mortgagor hereunder in such manner and to such extent as either may deem

necessary to protect the security hereof . . . [and] enter upon the Property for such purposes . . ." *Id.* § 24.

To remedy his default, Dai offered to tender ownership of the property to Apex by deed in lieu of foreclosure in December 2008. (Dkt. 135 ¶ 18; Dkt. 137 ¶ 8.) Apex conditionally agreed, and the Dais signed a deed and contract. (Dkt. 135 ¶ 18.) Upon receipt of those documents, Apex hired a local realtor to clean out and inspect the property. *Id.* ¶ 19. The inspection confirmed the City of Chicago's previous finding that the roof was collapsing. (Dkt. 135 ¶ 20; Dkt. 137 ¶ 10.) The Realtor therefore arranged to place a tarp over the roof, board up the windows, and change the locks on the doors. *Id.* ¶ 21. Apex never sought an order under the Illinois Mortgage Foreclosure Law (IMFL) placing it in possession of the property. *Id.* ¶ 22.

Although it admits it changed the locks, Apex claims that it "never prevented Dai from accessing the Property." *Id.* ¶ 25. This is of course a material fact, but Apex does not *genuinely* dispute it. Apex cites to one question and answer in Richard Dai's deposition to support its contention. (Dkt. 133-23, Apex Ex. 22, R. Dai Dep. at 119:12–15 ("Q: Did APEX Mortgage every prevent you or tell you you could not access the property? . . . A: No.").) Installing new locks and not providing the Dais with the keys effectively prevented the Dais from entering the property; Apex did not need to hire bouncers to stand in front of the doors to keep visitors out.

The Dais' deposition testimony is full of facts establishing that Apex never gave the Dais the keys and the Dais were consequently unable to access the property. (Dkt. 122-25, Federal Ex. 24, R. Dai Dep. at 23:11–13, 34:7–13, 71:13–72:9, 100:15–101:5,

106:14–107:9; Dkt. 122-26, Federal Ex. 25, C. Dai Dep. at 69:2–72:7, 86:16–88:7, 109:10–17, 158:15–159:12).) What is more, Apex's own counsel in the underlying case, Steven Pearson, represented that "[t]here is . . . no dispute that the Dais were not provided with keys to the new locks which were placed on the building at Apex's direction." Dkt. 122-38 at 3; *see* Dkt. 133-42 at 4–6. That led the state court to deny Apex's motion to dismiss in part because "Apex chang[ed] the locks on the premises to exclude others, including the owners . . . ." (Dkt. 122-30 at 5.)

On December 22, 2010, the building caught fire. (Dkt. 135 ¶ 28; Dkt. 137 ¶ 12.) In their efforts to extinguish it, firefighters Corey Ankum and Edward Stringer died when the roof collapsed on them. (Dkt. 135 ¶ 28; Dkt. 137 ¶ 12.) In 2011 and 2012, the representatives of their families sued the Dais and Apex in state court to recover damages for the tragic deaths of Ankum and Stringer. (Dkt. 135 ¶ 31; Dkt. 137 ¶ 13.) The principal issue in that case was "'whether Apex actually exercised dominion and control over the property so as to render it a possessor of the land for liability purposes.'" (Dkt. 135 ¶ 47 (citing Ex. 55, Mem. Op. at 5); Dkt. 137 ¶ 18 (citing Ex. 55, [ECF 133-56], July 18, 2016 Mem. Op. at 5).)

Shortly before trial, Apex settled the families' claims for $15 million. (Dkt. 135 ¶ 57; Dkt. 137 ¶ 27.) Federal then disclaimed coverage for the settlement because Apex "acquired the property as a mortgagee in possession." (Dkt. 135 ¶ 58; Dkt. 137 ¶ 28.) In March 2017, Apex sued Federal in district court to recover the money it believes Federal insured it for. (Dkt. 135 ¶¶ 68, 70; Dkt. 137 ¶ 29.)

## STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g.*, *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). The parties genuinely dispute a material fact when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Zander v. Orlich*, 907 F.3d 956, 959 (7th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

All agree that this case presents a straight-up legal question ripe for the Court's resolution: whether Apex acquired the property as a mortgagee in possession. If the answer is yes, then the exclusion in the insurance policy applies entitling Federal to summary judgment. If the answer is no, then the exclusion does not apply and Federal must cover the settlement, meaning summary judgment for Apex. The parties stipulated that Pennsylvania law governs all of Apex's claims in this lawsuit. (Dkt. 137 ¶ 33; Dkt. 122 ¶ 33 (citing Ex. 45, Stipulation Regarding Choice of Law).)

In Pennsylvania, an insurance policy is "nothing more than a contract between an insurer and an insured." *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 137 (Pa. 2019) (citing *401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005)). Just as in contractual interpretation, Pennsylvania courts must "'ascertain the intent of the parties as manifested by the terms used in the written insurance policy.'" *Id.* (internal citation omitted). So "'[w]hen the language of the policy is clear and unambiguous, a court is required to give effect to that language.'" *Id.* (internal citation omitted).

In so construing the parties' agreed-upon language, a Pennsylvania court must read the policy in its entirety and give words their plain and ordinary meaning. *See Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014) (citing *Riccio v. Am. Republic Ins. Co.*, 705 A.2d 422, 426 (Pa. 1997)). Courts may ascertain the "common and approved meaning of a word . . . from an examination of its dictionary definition." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 75 (Pa. 2014) (citing *Commonwealth v. Hart*, 28 A.3d 898, 909 (Pa. 2011); then citing *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999)); *see also Commonwealth by Shapiro v. UPMC*, No. 39 MAP 2019, 2019 WL 2275206, at *10 (Pa. May 28, 2019).

The "foreclosure" policy exclusion provides that: "This insurance does not apply to any liability or loss, cost or expense arising out of property you *acquire* by foreclosure, repossession, deed in lieu of foreclosure or as *mortgagee in possession*." Dkt. 122-7 at 63, Exhibit 6 – Federal Policy (March 1, 2010) (emphasis added); *see* Dkt. 133-14 at 64, Exhibit Ex-13-Federal-Policy. The Court will first define as a matter of

law what it means to "acquire" property as a "mortgagee in possession" under Pennsylvania law. *See Babcock & Wilcox Co. v. Am. Nuclear Insurers*, 131 A.3d 445, 456 (Pa. 2015) (interpreting an insurance contract is a question of law for courts to decide). Then the Court will proceed to apply that law to the facts of this case.

**I.     Acquire**

Acquiring property is "[t]he action of buying or gaining the possession of property." *Acquire*, Black's Law Dictionary (11th ed. 2019); *see Acquire*, Merriam-Webster's Collegiate Dictionary (11th ed. 2014) ("to come into possession or control of often by unspecified means"); *Acquire*, Oxford English Dictionary (3d ed. 2000) ("To gain possession of through skill or effort; to obtain, develop, or secure in a careful, concerted, often gradual manner."); *Acquire*, Cambridge Advanced Learner's Dictionary (4th ed. 2013) ("to obtain or begin to have something"). In everyday English, to 'acquire' something is merely to obtain it.

Apex insists that the term 'acquire' requires a transfer of title or ownership. Not so. The Supreme Court of the United States has said, albeit in another context, that acquire means "to come into possession, control, or power of disposal of," which "gives no intimation . . . that title or ownership would be necessary." *Huddleston v. United States*, 415 U.S. 814, 820 (1974). In fact, Apex cited its own Supreme Court case that stands for the same proposition. *See Helvering v. San Joaquin Fruit & Inv. Co.*, 297 U.S. 496, 499 (1936) ("The word 'acquired' is not a term of art in the law of property but one in common use. The plain import of the word is '*obtained as one's own*'.") (emphasis added).

Moreover, even if the term acquire requires a transfer of title or ownership in other situations, this is not one of them. The exclusion denies coverage for liability that arises out of property that Apex acquires as mortgagee in possession. But a mortgagee in possession does not obtain title to or ownership of the property; it only obtains *possession*. *See Zisman v. City of Duquesne*, 18 A.2d 95, 97 (Pa. Super. Ct. 1941) ("'The term 'mortgagee in possession' is applied to one who has lawfully acquired actual possession of the premises mortgaged to him, standing upon his rights as mortgagee and n*ot claiming under another title . . .*'") (quoting 41 Corpus Juris, p. 612, § 580) (emphasis added); § 121:3.Enforcement remedies available to mortgagee, 22 Standard Pennsylvania Practice 2d § 121:3 (stating that "a mortgagee in possession of the mortgaged property as a consequence of a default is not the equivalent of the owner of the property").

The Court cannot simply construe one term (acquire) to read another term (mortgagee in possession) out of the contract. Courts presume every word the parties agreed on has meaning and a contrary interpretation here would render "mortgagee in possession" superfluous because that type of possessor will never have title or ownership. In this case, Apex acquired the property because it obtained possession of it. Apex cleaned it, inspected it, placed a tarp over the roof, boarded up the windows, and changed the locks on the doors. (Dkt. 135 ¶¶ 19, 21.) In other words, it was in control of the building and therefore had acquired it.

## II. Mortgagee in Possession

On its face, the phrase "mortgagee in possession" has two components: (1) mortgagee; and (2) in possession. Apex does not contest that it was the mortgagee of the property, so this dispute really boils down to—as it did in the underlying case—whether Apex possessed the property. Not so fast, Apex contends, the phrase 'mortgagee in possession' has a unique definition under the law. Fair enough, but that does not get Apex far.

"'Mortgagee in possession' is a term applied to the special status of a mortgagee who has obtained possession of property from the mortgagor with the consent of the latter. Such consent is usually contained, as here, in the mortgage agreement." *Myers-Macomber Engineers v. M. L. W. Const. Corp.*, 414 A.2d 357, 359 (Pa. Super. Ct. 1979) (citing 55 Am. Jur. 2d Mortgages §§ 184–85, 193–96; Osborne, Mortgages §§ 160–176 (2d ed. 1970)); *see* 8 Summ. Pa. Jur. 2d Property § 21:66 (2d ed.); Restatement (Third) of Property (Mortgages) §§ 4.1(b)–(c) (1997) (citing § 3.1(c)); *id.* § 4.1 cmt. c (describing situations where the mortgagee is validly in possession, for instance, "where the mortgagee is invited into possession by the mortgagor or in some other manner acquires possession with the mortgagor's consent."); *id.* Illustration 4.

Breaking it down into bite-size pieces, a 'mortgagee in possession' under Pennsylvania law really is: (1) a mortgagee; (2) who obtained possession of property; (3) from the mortgagor; (4) with its consent. Well, Apex is a mortgagee who obtained possession of the building from the Dais with their consent. That consent, not

surprisingly, is found in the mortgage agreement. (Dkt. 122-2 § 23.4.) Apex makes several arguments against this result. None are persuasive.

*First*, Apex maintains that it entered the property under § 24 of the mortgage agreement, *not* § 23.4. (Dkt. 122-2.) This is a distinction without a difference because all that matters is that the Dais agreed that Apex would have the right to access the property and control it upon default. Under the agreement, that constitutes consenting to enter, act, protect, possess, manage, and operate. Again, this quickly becomes less of a legal question and more of a factual one: whether Apex in fact possessed the property.

*Second*, Apex asserts that the only way to become a mortgagee in possession in Illinois is to have a court order it during foreclosure proceedings. For starters, that contravenes the plain language of the mortgage agreement that grants Apex the rights of a mortgagee in possession "regardless of whether foreclosure proceedings have been instituted or not." (Dkt. 122-2 § 23.4.) What is more, a mortgagee does not need a court's blessing to take possession of a property so long as it has the mortgagor's consent. *See In re Panas*, 100 B.R. 734, 739 (Bankr. E.D. Pa. 1989). True, a "court's power to place a mortgagee in possession is dependent upon a motion by the mortgagee," however the conduct of private parties is not so circumscribed. *Marcon v. First Fed. Sav. & Loan Ass'n*, 374 N.E.2d 1028, 1030 (Ill. App. Ct. 1978).

The IMFL does not change this conclusion. By its own terms, that statute only governs "the right to possession of the mortgage real estate *during foreclosure*." 735 ILCS 5/15-1701. Its purpose is to provide a mechanism for a mortgagee to take

possession of property during foreclosure in the likely event it does not get a consensual relinquishment of possession from the mortgagor. *See Matter of Wheaton Oaks Office Partners Ltd. P'ship*, 27 F.3d 1234, 1241 (7th Cir. 1994). It is a 'likely' event because a mortgagor "may have it in mind to collect the rents during the pendency of foreclosure and not make his mortgage payments . . ." *Id.* (citing James McCafferty, *The Assignment of Rents in the Crucible of Bankruptcy*, 94 Com. L.J. 433, 437 (1989)).

In passing the IMFL, the Illinois Legislature did not intend "to make changes in substantive law." *Matter of Michigan Ave. Nat. Bank*, 2 B.R. 171, 182 (Bankr. N.D. Ill. 1980). As is the case with many statutes, the IMFL does not displace the common law scenario where a mortgagee takes possession with the mortgagor's consent. *See id.* (explaining that the legislature "did not deal with the substantive question of the circumstances under which a mortgagee would be entitled to possession prior to the institution of suit. That would appear to have remained unchanged . . ."). Consistent with this view, both the Illinois Supreme Court and the U.S. Court of Appeals for the Seventh Circuit have rejected Apex's interpretation of the IMFL. *See Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, ¶¶ 56–57; *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 688 (7th Cir. 2015).

Properly understood, the conditional grant of possessory rights to a mortgagee is an enforcement remedy *alternative* to foreclosure. *See Myers-Macomber Engineers*, 414 A.2d at 360 (reasoning how it "avoids the drastic step of foreclosure, while enabling the mortgagee to protect and preserve its security interest. The mortgagee does not thereby limit its right to foreclose, and, upon foreclosure, the mortgagee may

purchase the property at sheriff's sale. Frequently, foreclosure becomes necessary despite the salvage efforts of a mortgagee . . ."); *see* § 121:3, Enforcement remedies available to mortgagee, 22 Standard Pennsylvania Practice 2d § 121:3. Even if Apex is right and a mortgagee can only take possession of property in Illinois during foreclosure, it would not much matter because control is the critical question here, not lawful authorization. *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 49 cmt. i (2009).

*Third*, Apex declares it was an occupier of land exercising control—not possession—under a common law premises liability theory. To be sure, Apex is correct that an occupier and possessor are not necessarily equivalent. *See Shaffer v. Lang*, No. 86 MDA 2018, 2018 WL 5317993, at *5 (Pa. Super. Ct. Oct. 29, 2018); *Bruzgulis v. Landowners Wildlife Protective Ass'n*, No. 952 MDA 2017, 2018 WL 2077837, at *2 (Pa. Super. Ct. May 4, 2018). For the purposes of liability for the condition and use of land, though, there is no freestanding concept of an occupier that is distinct from a possessor.

Rather, a "possessor of land is a person *who is in occupation of the land* with intent to control it." Restatement (Second) of Torts § 328E(a) (1965) (emphasis added); *see Stanton v. Lackawanna Energy, Ltd.*, 886 A.2d 667, 677 (Pa. 2005); *see also Cholewka v. Gelso*, 193 A.3d 1023, 1027 (Pa. Super. Ct. 2018); *Blackman v. Fed. Realty Inv. Trust*, 664 A.2d 139, 142 (Pa. Super. Ct. 1995). The only relevant legal actor—indeed, the only one who may be held liable—is the possessor of the land. A

mortgagee in possession, then, is just a type of possessor of land who is in turn answerable under a premises liability theory.

Apex additionally says all it did was evaluate, protect, and preserve its collateral. Well, it should not come as a surprise that one of the main reasons mortgagees take possession is to protect and preserve their security interests. *See Myers-Macomber* Engineers, 414 A.2d at 359; *Cent. Pennsylvania Sav. Ass'n v. Carpenters of Pennsylvania, Inc.*, 463 A.2d 414, 417 (Pa. 1983); 8 Summ. Pa. Jur. 2d Property § 21:66 (2d ed.). So, Apex's actions to evaluate, protect, and preserve its collateral actually make it even more of a fit for mortgagee-in-possession status.

*Fourth*, Apex posits that applying the mortgagee-in-possession exclusion this broadly will enable Federal to exclude coverage whenever its insured must defend against a common law "occupier" premises liability claim based on dominion or control. The Court does not foresee such a slippery slope. As Federal points out, it will continue to provide coverage for premises liability claims based on Apex's possession of property as an owner or lessor, so long as Apex did not acquire ownership through foreclosure or deed in lieu of foreclosure. The exclusion only disclaims coverage for premises liability claims based on Apex's possession of mortgaged property. This makes some sense: an insurer cannot reasonably ascertain the risk and underwrite coverage for premises liability claims for all properties that a lender mortgages.

In mortgagee scenarios like this one, Federal will continue to bear the burden of proving that its insured is: (1) a mortgagee; (2) that acquired property; (3) as a possessor (meaning it occupied it with the intent to control it); and (4) with the

consent of the mortgagor. If Federal is unable to satisfy any one of those prerequisites to the foreclosure exclusion, it may not then disclaim coverage. *See Marcon*, 374 N.E.2d at 1030 (noting that a mortgagee does not become a mortgagee in possession until it acquires actual possession). That is no small feat; it just happens to be one Federal accomplished here.

*Fifth*, and finally, Apex professes that the plaintiffs in the underlying litigation did not allege or seek to prove that Apex acquired the property as a mortgagee in possession. As a preliminary matter, that is not an accurate reading of the record. (Dkt. 122-21 at 5, 13, 22; *see generally* Dkt. 122-27; Dkt. 122-28; Dkt. 122-30 at 3.) More to the point, it is of course a first principle of tort law that only the possessor of land is generally liable for its condition. *See Hamsher v. Shook*, No. 3015 EDA 2018, 2019 WL 1976091, at *4 (Pa. Super. Ct. May 3, 2019); *Eisbacher v. Maytag Corp.*, No. 1163 MDA 2015, 2017 WL 947606, at *6 (Pa. Super. Ct. Mar. 9, 2017). So, the possessor of the property was who the plaintiffs had to sue to recover for their devastating losses.

Apex, though, was also the indisputable mortgagee of the property. Typically, mortgagees are not responsible for property maintenance; but when a mortgagee is in possession of the property, it is responsible for that maintenance. *See Marcon*, 374 N.E.2d at 1030 (finding that "only a mortgagee exercising dominion and control over the mortgaged property can be held responsible for damages to third parties caused by unsafe conditions on the property. Constructive possession, as in this instance, is insufficient; there must be actual possession and control of the premises."). *Marcon*

sets the scope of liability for mortgagees in possession, which is one of the ways an insured acquires property under the exclusion.

Whether a mortgagee in possession or some other kind of possessor possesses the land, the theory of liability remains the same: premises liability. There is no special liability for mortgagees in possession. Put differently, a possessor of land need not be a mortgagee to be liable for a defect in the land. But a mortgagee must be a possessor of land to be liable for a defect in the land. All along, the key inquiry has been—and remains—possession. "Two critical factors determine whether the defendant possesses land: (1) the legal interest it has in the land, and (2) the degree of control it actually exercises over the land." *Eisbacher*, 2017 WL 947606 at *6 (internal citation omitted).

In this case, Apex had a mortgage on the land, so it must have exercised sufficient control over the land to possess it. The cleaning, inspection, tarp, and boarded-up windows demonstrate occupation. But it is the changed locks that show the exclusion of others, which crucially included the owners. Limiting access to and use of land by virtue of a gate—or here, locked doors—exemplifies control. *See Stanton*, 886 A.2d at 676. Formalities are not important; as a practical matter, Apex was a mortgagee in possession of the property.

## CONCLUSION

In short, Federal properly denied coverage under the foreclosure exclusion because Apex was indisputably a mortgagee in possession of the property. The Court

resultingly grants Federal's motion (Dkt. 121), denies Apex's cross-motion (Dkt. 132), and enters summary judgment in Federal's favor on all claims.

_____
Virginia M. Kendall
United States District Judge

Date: July 9, 2019